UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HECTOR MEDINA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>J.P. MORGAN INVESTMENT MANAGEMENT, INC., and JP MORGAN CHASE & CO.,<br><br>　　　　Defendants. | No. 15 CV 11611<br><br>Judge Manish S. Shah |

## ORDER

The motion to dismiss Counts III through VII of plaintiff's third amended complaint, [18], is granted. Count VI is dismissed, with prejudice (and without objection), as time-barred. Counts III and V are similarly dismissed, with prejudice, to the extent they allege injury from a hostile work environment; insofar as these counts rest on plaintiff's discharge, however, the claims may be re-pleaded and are dismissed without prejudice. Counts IV and VII are dismissed without prejudice for failure to exhaust.

## STATEMENT

Hector Medina worked as a benefits analyst for JP Morgan[1] from April 2008 to December 2013, when he was fired. *See* [11] ¶¶ 9–10.[2] Medina performed well during the first four of those years, receiving positive performance reviews and developing good working relationships with his superiors. *See id.* ¶ 11. In early 2012, however, Medina was assigned new supervisors, Louis Cline and Deena Rafferty, and things started to go downhill. *See id.* ¶¶ 13–14. From March to September 2012, Medina claims that Cline and Rafferty treated him poorly—and differently than they did his non-Hispanic, non-disabled co-workers (Medina suffers from multiple

---

[1] Medina has named both J.P. Morgan Investment Management and JP Morgan Chase & Co. as defendants. For simplicity, I refer to both entities collectively as "JP Morgan" or "defendant."

[2] Bracketed numbers refer to entries on the district court's docket; referenced page numbers are from the CM/ECF header placed at the top of filings.

sclerosis)—by questioning him about his "backlog" and demanding that he provide a daily accounting of his time at work; requiring that he respond to all e-mails within 24 hours; refusing to respond to his requests for time off (or, to the extent they did respond, requiring Medina to provide detailed explanations of who would be completing his tasks in his absence); and demanding that Medina seek permission to work overtime, even when overtime work was necessary to meet deadlines. *See id.* ¶¶ 14–24.

Medina was upset by this treatment and tried to alert the Human Resources department about it as early as March 2012, but didn't receive a response until August of that year. *See id.* ¶¶ 25–26. A Human Resources representative then suggested that Medina take his available leave under the Family and Medical Leave Act. *See id.* ¶ 26. Medina replied that he was not requesting medical leave and explained that his complaints were about his supervisors' behavior, but the representative again recommended that Medina take his FMLA leave. *See id.* Unable to cope with how he was being treated at work, Medina followed this recommendation and went on short-term disability leave beginning September 2, 2012. *See id.* ¶ 27. When his leave expired in September 2013, Medina asked that he be assigned to a different supervisor; the request was denied. *See id.* ¶¶ 27–28. Human Resources told Medina to apply for other positions in the company, which he did, but he was interviewed for none. *See id.* ¶ 29. Medina was let go in December 2013. *Id.* ¶ 30.

On August 28, 2014, Medina filed a charge of discrimination with the Equal Employment Opportunity Commission. *See id.* ¶ 6; *see also* Exhibit 1 to the Amended Complaint, *id.* at 22–24. In the EEOC form, Medina checked boxes to indicate that the alleged discrimination was based on his disability and national origin, and provided the following description:

> I began my employment with [JP Morgan] on or about April 1, 2008. . . . [JP Morgan] was aware of my disability. During my employment, I was subjected to harassment and different terms and conditions of employment, including, but not limited to, additional reporting requirements and restrictions of leave. I went on a medical leave of absence. Upon my return I requested a reasonable accommodation which was not provided. Subsequently, on or about December 24, 2013, I was discharged.
>
> I believe I have been discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended.

> I believe I have been discriminated against because of my national origin, Puerto Hispanic, in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id.* at 22. The EEOC issued to Medina a right-to-sue letter on September 30, 2015, *id.* ¶ 7, and Medina filed suit against JP Morgan on December 23, 2015, [1] (later amended at [11]).

In his federal complaint Medina included claims for discrimination and retaliation under: 42 U.S.C. § 1981 (Counts I and II); Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* (Counts III and IV); and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (Counts V and VII). *See* [11] at 9–18. He also included a claim for failure to accommodate his disability, again in violation of the ADA (Count VI). *Id.* at 16–17. JP Morgan moves to dismiss the Title VII and ADA discrimination claims and failure-to-accommodate claim as untimely, and the retaliation claims under these statutes as barred for failure to exhaust Medina's administrative remedies. [18]. Medina agrees that the failure-to-accommodate claim is time-barred, *see* [20] at 6, so I address only the discrimination and retaliation claims.

*The Discrimination Claims (Counts III and V)*

Before a plaintiff may sue under Title VII or the ADA, he must first file a charge with the EEOC. *See* 42 U.S.C. §§ 2000e-5(e)(1), 2000-e5(f)(1) (addressing requirements under Title VII); *id.* § 12117 (incorporating into the ADA the procedures set forth in Section 2000e-5). In Illinois, this charge must be submitted within 300 days after the allegedly unlawful employment practice occurred. *See id.* § 2000e-5(e)(1); *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014) (citations omitted). Medina filed his EEOC charge on August 28, 2014, so to be actionable, the conduct at issue must have taken place no earlier than November 1, 2013. But the harassment by Cline and Rafferty allegedly took place before Medina went on leave in September 2012—more than a year before that cutoff.

Medina argues that timeliness isn't an issue because he was again subjected to a hostile working environment when, after his medical leave expired in September 2013, the Human Resources department did not help him find another position in the company—thus bringing the statutory violations into the critical period. *See* [20] at 4. A hostile-work-environment claim is timely as long as any act contributing to the claim occurred within the filing period. *Nat'l R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 117 (2002); *Swanson v. Vill. of Flossmore*, 794 F.3d 820, 826 (7th Cir. 2015) (noting that plaintiffs asserting such claims may invoke the "continuing violations doctrine"). And there may in some cases be a gap between contributing acts. *See Morgan*, 536 U.S. at 118 (explaining that conduct occurring some 300 days apart may

still be part of the same whole). But the continuing-violations doctrine cannot help Medina. Even assuming that the failure(s) by Human Resources to assist Medina in finding another position occurred after November 1, 2013—which is unclear from his pleading, *see* [11] ¶¶ 27–29 (suggesting that these events took place in or after September 2013, but neglecting to specify dates)—they were discrete acts, executed by persons other than those allegedly responsible for the harassment in 2012. Discrete acts such as termination, failure to promote, and denial of transfer—here, a denial of transfer to another supervisor or position—are separate employment practices, each actionable in their own right (within the proper time period). *See Morgan*, 536 U.S. at 114. They are different in kind from the frequent, repeated conduct underlying a hostile-environment claim. *See id.* at 115, 120. That conduct, like the unreasonable reporting requirements, etc., that Medina says his supervisors imposed, occurred in 2012. Insofar as Cline's and Rafferty's actions in 2012 constituted a single employment practice, it cannot be said that Human Resources' failure to transfer Medina in 2013 was a part of that practice. To the extent Medina bases his discrimination claims on a hostile work environment, the claims were untimely and the motion to dismiss them is therefore granted, with prejudice.

Medina argues that the discrimination claims should be allowed to proceed to the extent they are based on his termination, which occurred after November 1, 2013. *See* [20] at 2–3. Had Medina alleged a discriminatory discharge, these claims would have been timely. But as currently pleaded, his complaint does not adequately tie his firing to any discriminatory animus. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007))) (internal quotation marks omitted); 42 U.S.C. § 2000e-2(a)(1) (prohibiting employers from discharging any individual "*because of* such individual's . . . national origin") (emphasis added); *id.* § 12112(a) (prohibiting discrimination "*on the basis of* disability in regard to [the] discharge of employees") (emphasis added). Accordingly, these claims are also dismissed—though they are dismissed without prejudice, as the deficiency just noted may be cured through re-pleading.

*The Retaliation Claims (Counts IV and VII)*

In general, a plaintiff is barred from pursuing in the district court a claim that he has not raised in his EEOC charge. *See Whitaker v. Milwaukee Cnty., Wis.*, 772 F.3d 802, 812 (7th Cir. 2014) (citation omitted). But he may proceed with such a claim if it is like or reasonably related to the charge, and reasonably could be expected to grow out of an EEOC investigation into the charge. *See id.*; *Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002) (citation omitted). JP Morgan argues that Medina cannot pursue his Title VII and ADA retaliation

4

claims because those claims were not included in Medina's EEOC charge, and they are not like or reasonably related to complaints of discrimination that were included. *See* [19] at 7–8.

Discrimination and retaliation claims normally are not "related" in the sense relevant here. *Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 864–65 (7th Cir. 2010) (citations omitted). And Medina's EEOC charge suggests of no facts that reasonably could have led to an investigation of retaliation under Title VII: as far as his national origin is concerned, Medina stated in his charge only that he was subjected to harassment and different conditions of employment, and had been discriminated against because he was Hispanic. *Cf. Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) ("Pleading a retaliation claim under Title VII requires the plaintiff to allege that [he] engaged in statutorily protected activity and was subjected to an adverse employment action as a result." (quoting *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013))) (internal quotation marks omitted). Medina did not properly exhaust his Title VII retaliation claim.

As to the ADA claim, the EEOC charge included more details. Medina stated in his charge, "I went on a medical leave of absence. Upon my return I requested a reasonable accommodation which was not provided. Subsequently, . . . I was discharged." [11] at 22. Though he did not check the box for "retaliation," Medina did describe facts that could suggest he was fired for engaging in protected activity. *See Taylor-Novotny v. Health Alliance Med. Plans, Inc.*, 772 F.3d 478, 494–95 (7th Cir. 2014) (requesting an ADA accommodation is a protected activity). But requesting an accommodation for his disability is *not* the kind of protected activity on which Medina now relies to plead retaliation. In his federal complaint, Medina alleges that JP Morgan fired him in December 2013—and refused to accommodate his disability by transferring him to another supervisor when he submitted such a request in or after September 2013—because he had told Human Resources in 2012 about the hostile work environment purportedly created by Cline and Rafferty. *See* [11] ¶¶ 25–28, 97–101. There was no mention in the EEOC charge of Medina's having complained about the hostile work environment to HR. Because his ADA retaliation claim relies on a protected activity not described in his charge, this claim has not been properly exhausted. *See Swearnigen-El*, 602 F.3d at 864 (explaining that, to be "like or reasonably related," the claim must at a minimum describe the same conduct).

Medina argues that he should be allowed to proceed with both of his retaliation claims because he filed his EEOC charge *pro se*, and thus he should be held to less exacting standards than would a plaintiff who had completed his charge with the assistance of counsel. *See* [20] at 5–6. This argument is unpersuasive. Medina need not have articulated in his charge "the full panoply of [unlawful conduct] he may have suffered," but he was expected at least to have stated in laymen's terms the unfair things he believed had happened to him. *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 168 (7th Cir. 1976) (citation omitted); *cf. Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 702–03 (7th Cir. 1999) ("[W]hether or not the complainant had a lawyer, . . . whether or not she read or understood the charge, it was *her* charge, and it did not put her former employer on notice of [the] claim."). Medina did not put JP Morgan on notice of either retaliation claim, and defendant's motion to dismiss these claims is granted.

ENTER:

Date: 5/23/16

Manish S. Shah
U.S. District Judge

6